IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CEDRIC L. GRAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.           ) | CIVIL ACTION NO.  2:05cv1195-CSC |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff Cedric Gray ("Gray") applied for supplemental security income benefits under Title XVI of the Social Security Act,  42 U.S.C. § 1381 et seq. alleging that he was unable to work because of a disability.  His application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3).  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2]A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).³

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** In June 2000, Gray filed his application for benefits alleging disability since July 15, 1999.⁴ (R. 54). He alleged disability due to pain and swelling in his

---

³*McDaniel v. Bowen,* 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

⁴ The ALJ found that the plaintiff had applied for SSI benefits on December 18, 2002 alleging he became disabled on July 15, 1999. (R. 13). On his disability report, the plaintiff alleged he became disabled on June 1, 2001. (R. 64).

back as a result of being stabbed in 1996. (R. 14 & 64). At the administrative hearing, the plaintiff's representative asserted that the plaintiff was disabled because he was mentally retarded. (R. 14 & 212). The plaintiff was 28 years old at the time of the hearing before the ALJ[5] and has an eleventh grade education. (R. 19 & 212). The plaintiff's prior work experience includes work as a day care worker, furniture mover, construction worker and janitor. (R. 19). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "malingering, obesity, borderline intellectual functioning, a dysthymic disorder, and status post stab wound to the back." (R. 17). The ALJ concluded that the plaintiff was unable to perform his past relevant work, but, using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework and relying on the testimony of a vocational expert, concluded that there was a significant number of jobs in the national economy that the plaintiff could perform. (R. 19-21). Therefore, the ALJ concluded that the plaintiff was not disabled.

**B. Plaintiff's Claim.**  In his brief, the plaintiff presents one issue for the Court's review. As stated by him, the issue is "whether the Commissioner erred in finding that Plaintiff does not suffer from mild mental retardation, and that his condition does not meet Listing 12.05(C)." (Pl's Br. at 1 & 3).

### IV. Discussion

The plaintiff contends that the Commissioner erred in failing to find, as a matter of

---

[5] In his opinion, the ALJ noted that the plaintiff was 29 apparently because the plaintiff had his birthday five days after the hearing.

law, that he is disabled under Section 12.05C of the Listing of Impairments. *See* 20 C.F.R. Subpt P, App. 1. The regulations define mental retardation as "significantly sub-average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of impairment before age 22." *Id.* In addition to this requirement, the Listings provide, in pertinent part, that a claimant is disabled if he meets the following severity criteria:

> § 12.05C. Mental Retardation . . . The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .
>
> C. A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

Consequently, a claimant meets the strictures of 12.05C by presenting evidence of a valid IQ score of 60 to 70 inclusive and evidence of an additional mental or physical impairment that has more than a "minimal effect" on the claimant's ability to perform basic work activities.[6] *Lowery v. Sullivan*, 979 F.2d 835 (11th Cir. 1992); *Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985) (An impairment imposes significant limitations when its effect on a claimant's ability to perform "basic work activities" is more than slight or minimal.).

On November 25, 2000, the plaintiff underwent a consultative physical examination by Dr. Elmer Roque. At that time, Dr. Roque opined that Gray would "benefit from a further

---

[6] The Listing also requires that the "sub-average general intellectual functioning initially manifested prior to age twenty-two." However, in this Circuit it is presumed that "mental retardation is a condition that remains constant throughout life" and the claimant is not required to present evidence that adaptive deficits were manifested before age 22. *Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001). *See also Burt v. Barnhart*, 151 Fed. App. 817, *2 (11th Cir. 2005).

psychiatric evaluation and possibly treatment of depression and phobic attacks." (R. 158). However, Gray did not want to seek treatment or see a doctor. (R. 155). Dr. Roque concluded that Gray had no physical limitations. (R. 158).

On November 29, 2000, Gray underwent a consultative psychological evaluation by Dr. Karl Kirkland. At that time, Dr. Kirkland noted that Gray was "evidencing submaximal effort" and "appear[ed] to be malingering in order to make a better case for his [disability] application." (R. 161). Dr. Kirkland administered the Wechsler Intelligence Scale - III to Gray. (*Id*.). Gray obtained a verbal scale IQ score of 55, a performance scale IQ score of 52, and a full scale IQ score of 49. (*Id*.). Dr. Kirkland concluded that Gray's scores "reveal consistent functioning in the lower range of mild mental retardation." (*Id*.). However, Dr. Kirkland also opined that Gray was malingering. (R. 161-62).

On March 2, 2001, Gray underwent a consultative psychological evaluation by Dr. Curry Hammack. (R. 163). Dr. Hammack administered the Wechsler Intelligence Scale - 3rd edition to Gray. (R. 164). Gray obtained a verbal scale IQ score of 79, a performance scale IQ score of 69, and a full scale IQ score of 72. (*Id*.). Dr. Hammack opined that Gray "put forth adequate effort on the WAIS-3, and test scores are felt to be reasonably valid." (R. 165). Dr. Hammack concluded that Gray was functioning in the Borderline Range of Intellectual Development and that he suffered from mild to moderate depression. (R. 165-66).

Finally, Dr. Alan Babb conducted a physical consultative examination of Gray on January 24, 2003. (R. 185). At that time, Gray denied "any paranoia, suicidal ideation or

thought." (R. 187). Dr. Babb could not "identify any disabling conditions." (*Id*). He did, however, "strongly suspect" that Gray was malingering. (*Id*.). According to Dr. Babb, Gray was "profoundly unmotivated." (*Id*.).

The ALJ's conclusion that Gray did not satisfy the requirements of Listing 12.05C was primarily premised on the testimony of the medical expert, Dr. Nancy Sack, a licensed clinical psychologist. At the administrative hearing, Dr. Sack testified that while Gray's IQ scores placed him in the mild range of mental retardation, she questioned the validity of the scores based upon evidence of malingering and his academic records.

> A: Okay. I'd like to point out first that there's two indications in the file of malingering. He was diagnosed by Dr. Kirkland as malingering, and there's a lot of information in Dr. Kirkland's that is very supportive of that diagnosis. There's also question in Dr. Babb's – the medical doctor's consultative exam. It says he strongly suspects malingering, but putting that on the side just saying it is in the file, I think that there is the question of the IQ and of the post-traumatic stress disorder. And that the certain [INAUDIBLE] IQ of 49 in 2000 is not valid. The more valid one would be in '01, where he received a verbal of 79, performance of 69, and a full-scale of 72. That's more in the range of what would be expected given his history, and perhaps given his school records. That – you know, it may even be a little low, but for the school record – because his school records indicate he took Biology. He took history. He took literature. He took government. He took economics. He took some regular classes, which would of been more difficult. He did have a number of indications of his classes being vocational training also. I would also point out that in 10th, 11th, and 12th grades, he missed a lot of school. So, there is a question of the 69 and my – accept that as valid, but there comes a question of adaptive functioning. And Dr. Hammack's assessment of this gentleman was that he would be able to remember and carry out multi-part, mildly complex labor type work, which is a strong statement about this gentleman's adaptive functioning. So I think that his adaptive functioning is solidly in the borderline range, and there's no question that it – his adaptive functioning would not meet the listing of 4.05C

7

>   (sic).  . . . I don't think this gentleman meets or equals any of the listing (sic) either in combination or singly. And he was able to pass the exit exam at school. He did take it four or five times to pass it, but it (sic) pass all parts of the exit exam for school.

(R. 222-23).

The ALJ gave substantial weight to the testimony of Dr. Sack and concluded that the plaintiff's IQ scores are inconsistent with his actual intellectual functioning. Substantial evidence supports the ALJ's conclusion. The law in this circuit is that a claimant's IQ score is not conclusive evidence of a disability when it is inconsistent with other evidence of the claimant's daily activities and behavior. *See Popp v. Heckler*, 779 F.2d 1497 (11th Cir. 1986). In *Popp*, the Eleventh Circuit Court of Appeals held that the Listings for mental retardation do not require the Commissioner to make a finding of mental retardation based upon the results of an I.Q. test alone. However, the test results must be considered in context with other evidence including the daily activities and behavior of the claimant. *Id.* at 1499. If the ALJ concludes from other evidence in the record that the IQ scores are inconsistent with the claimant's actual intellectual functioning, the ALJ may properly find that the claimant does not meet the criteria of § 12.05. The ALJ's decision is reviewable by the court for substantial evidence.

Gray completed the eleventh grade in regular, non-special education classes. (R. 70). He received grades ranging from B's to D's. (R. 116). In the ninth grade, some of Gray's classes included Basic Grammar and Reading, Alabama History and World Geography, and Masonry. (*Id.*). His first semester grades were all B's. (*Id.*). Thereafter, Gray took

Biology, Consumer Math, Ecology, English, and U.S. History.  (*Id*.).  While his grades ranged from B's to F's, his attendance also decreased substantially.  (*Id*.).  Gray finally dropped out of school in the twelfth grade.  (*Id*.).  After taking the Alabama high school exit exam several times, Gray finally passed all portions of the test.  (*Id*.).

Gray did not apply for, nor did he allege until the administrative hearing, disability based on sub-average intellectual functioning.  In fact, when Gray was interviewed by the disability field officer on December 18, 2002, she noted that he had no difficulty reading, understanding, concentrating, talking, answering, or writing.  (R. 77).  Gray completed a physical activities questionnaire without assistance.  (R. 79-84).  Finally, two consultative examiners questioned Gray's efforts noting that he "was not trying very hard" (R. 161); he put forth "submaximal effort" (*Id*.); his "effort [was] extremely poor" (R. 187); and he was "profoundly unmotivated."  (R. 187).  The ALJ concluded that "[s]ince the claimant is a malingerer whose allegations are inconsistent with and unsupported by the objective medical evidence, I can give no weight to his allegation."  (R. 19).

The plaintiff argues that he meets the Listing because he has presented evidence that he has adaptive deficits.  According to Gray, there is no requirement that the deficits rise to "any level of severity."  (Pl's Br. at 4).  The plaintiff is simply wrong.  In addition to the requisite IQ score, the plaintiff must present evidence of a physical or other mental impairment which imposes additional significant limitations of function. 20 C.F.R. Pt. 220, App. 1. Listing 12.05 (emphasis added), which as explained above means something more than slight or minimal.  While Dr. Sack conceded that Gray had "some limits in adaptive

9

functioning," (R. 224), the overall record does not indicate that his intellectual deficiencies had anything more that a slight or minimal affect on his ability to work. Given the evidence in this record, the court concludes that the ALJ's determination that Gray did not satisfy the requirements of section 12.05 was supported by substantial evidence.

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed. Thus, this case will be dismissed with prejudice.

A separate order will issue.

Done this 20th day of February, 2007.

      /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE